UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RALPH SEILER,

                    Petitioner,

vs.                                Case No.  2:08-cv-285-FtM-29SPC

SECRETARY, FLORIDA DEPARTMENT OF
CORRECTIONS,

                    Respondent.
_____

## OPINION AND ORDER

Petitioner Ralph Seiler, represented by counsel, initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1, Petition) pursuant to 28 U.S.C. § 2254 on April 3, 2008, challenging Petitioner's judgment of conviction for sexual battery on a child under twelve years of age in violation of § 794.001(2), Fla. Stat. (1997), entered in the Twentieth Judicial Circuit Court, Glades County, Florida (case number 00-000121-CF).  The Respondent filed a Response (Doc. #11, Response) in opposition to the Petition and attached supporting exhibits (Doc. #13, Exhs. 1-10), consisting of the post-conviction pleadings and the 10 volume record on direct appeal.  Petitioner filed a Reply to the Response (Doc. #20, Reply).  Upon review of the Reply, on June 14, 2010, the Court directed Respondent to file a limited supplemental response (Doc. #22).  Pursuant to the Court's June 14, 2010 Order, Respondent filed an Amended Limited Response to Reply (Doc. #24, Amended Response).  This matter is ripe for review.

## I. Procedural History

On November 3, 2000, Petitioner was charged by Information with one count of sexual battery, which occurred between March 1, 1998 and March 31, 1998, on "N.S."[1] a child less than twelve years, "by placing his penis in N.S's mouth, contrary to Florida Statue 794.011(2)." Exh. 10, Vol. I at 9-10. The case proceeded to trial. On May 9, 2002, the jury returned a verdict of guilty as charged. Id. at 30. On May 16, 2002, Petitioner filed a motion for a new trial. Id. at 32-36. The court denied the motion. Id., Vol. II at 52. On September 6, 2002, the court entered judgment and sentenced Petitioner to a term of life in prison, with a minimum mandatory sentence of 25 years. Id. at 63-67.

Petitioner, represented by appointed counsel, filed a direct appeal, raising the following four grounds of trial court error:

1.  The Trial Judge Erred in Denying Mr. Seiler's Motion for Mistrial and Motion for a New Trial Based upon the Prosecutors Reference to Child Hearsay Statements During the Trial.

2.  The Trial Judge Erred in Denying Mr. Seiler's Motion for New Trial Based upon Cumulative Prosecutorial Misconduct.

3.  The Trial Judge Erred in Denying Mr. Seiler's Motion to Interview the Specified Jurors.

4.  The Trial Judge Erred in Denying Mr. Seiler's Pretrial Motion for Sanctions/Dismissal Directed to the Loss or Destruction of Officer Sapp's Notes Which Would Have Been Exculpatory.

---

[1]In an attempt to protect the identity of the child-victim, the Court will refer to child victim's initials, as opposed to the child-victim's legal name.

Exh. 1.  The State filed an answer brief.  Exh. 2.  On July 22, 2005, the Second District Court of Appeal issued a *per curiam* opinion affirming Seiler's conviction and sentence.  Exh. 3; Seiler v. State, 907 So. 2d 533 (Fla. 2d DCA 2005).

On May 30, 2006, Petitioner, through counsel, filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 raising five grounds for relief: three grounds alleging ineffective assistance of trial counsel, and two grounds alleging trial court error.  Exh. 6.  The postconviction court, in a written order dated April 2, 2007, summarily denied all five grounds, finding that: trial counsel was not deficient as to the first three grounds; and the two grounds of trial court error were procedurally barred.  Exh. 7.  Petitioner appealed the postconviction court's denial as to the three grounds of ineffective assistance of trial counsel only.  Exh. 8.  On February 20, 2008, the appellate court *per curiam* affirmed the postconviction court's order, and mandate issued on March 13, 2008.  Exh. 9.  Thereafter, Petitioner initiated the instant timely[2] Petition raising four grounds for relief.

## II.  Applicable § 2254 Law

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), governs this

---

[2]Respondent concedes, and the Court agrees, that the Petition is timely filed.  Response at 4.

action.   Abdul-Kabir v. Quarterman, 550 U.S. 233, 246 (2007); Penry v. Johnson, 532 U.S. 782, 792 (2001).   Under AEDPA, the standard of review is greatly circumscribed and highly deferential to the state courts.   Alston v. Fla. Dep't of Corr., 610 F.3d 1318, 1325 (11th Cir. 2010)(citations omitted).   AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."   Bell v. Cone, 535 U.S. 685, 693 (2002).   The following legal principles apply to this case.

### A.   Only Federal Claims are Cognizable

A federal court may entertain an application for a writ of habeas corpus from a person in state custody pursuant to a state court judgment only on the grounds that the petitioner is in custody in violation of the United States Constitution or the laws or treaties of the United States.   28 U.S.C. § 2254(a).   A claimed violation of state law is insufficient to warrant review or relief by a federal court under § 2254.   Pulley v. Harris, 465 U.S. 37, 41 (1984)(stating "[a] federal court may not issue the writ on the basis of a perceived error of state law.");   Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)(stating "[t]oday, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.");   Waddington v. Sarausad, 129 S. Ct. 823, 832 n.5 (2009)(same);   Cabberiza v. Moore, 217 F.3d

1329, 1333 (11th Cir. 2000)(stating § 2254 not enacted to enforce state-created rights); <u>Carrizales v. Wainwright</u>, 699 F.2d 1053, 1055 (11th Cir. 1983)(finding claim involving pure question of state law does not raise issue of constitutional dimension for federal habeas corpus purposes; state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved).

**B.  Federal Claim Must Be Exhausted in State Court**

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ." 28 U.S.C. § 2254(b)(1)(A).  This imposes a "total exhaustion" requirement in which all of the federal issues must have first been presented to the state courts. <u>Rhines v. Weber</u>, 544 U.S. 269, 274 (2005).  "Exhaustion requires that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.  That is, to properly exhaust a claim, the petitioner must fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." <u>Mason v. Allen</u>, 605 F.3d 1114, 1119 (11th Cir. 2010)(citing <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999) and <u>Castile v. Peoples</u>, 489 U.S. 346, 351 (1989)).

To fairly present a claim, a petitioner must present the *same* federal claim to the state court that he urges the federal court to consider.  A mere citation to the federal constitution in a state court proceeding is insufficient for purposes of exhaustion. Anderson v. Harless, 459 U.S. 4, 7 (1983).  "'[T]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'" McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005) (quoting Kelley v. Sec'y for the Dep't of Corr., 377 F.3d 1317, 1343-44 (11th Cir. 2004)).  Nor does a petitioner alert a state court of a federal claim if the appellate court is required to read beyond the petition or brief to find material or support for the presence of a federal claim.   Baldwin v. Reese, 541 U.S. 27, 32 (2004). Instead "[a] litigant wishing to raise a federal issue can easily indicate the federal basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."  Id.

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine."  Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001).  Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default

which will bar federal habeas relief, . . . . ." <u>Smith</u>, 256 F.3d at 1138.  A procedural default for failing to exhaust state court remedies will only be excused in two narrow circumstances.  First, a petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the asserted error.  <u>House v. Bell</u>, 547 U.S. 518, 536-37 (2006); <u>Mize v. Hall</u>, 532 F.3d 1184, 1190 (11th Cir. 2008).  Second, under exceptional circumstances, a petitioner may obtain federal habeas review of a procedurally defaulted claim, even without a showing of cause and prejudice, if such review is necessary to correct a fundamental miscarriage of justice.  <u>House</u>, 547 U.S. at 536; <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000).

### C.  Deference to State Court Decision

A federal court must afford a high level of deference to the state court's decision.  <u>Ferguson v. Culliver</u>, 527 F.3d 1144, 1146 (11th Cir. 2008).  Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  <u>See Berghuis v. Thompkins</u>, 130 S. Ct. 2250, 2259 (2010).  A state court's summary rejection of a claim, even

without explanation, qualifies as an adjudication on the merits which warrants deference. <u>Blankenship v. Hall</u>, 542 F.3d 1253, 1271 (11th Cir. 2008); <u>Ferguson</u>, 527 F.3d at 1146; <u>Wright v. Sec'y Dep't of Corr.</u>, 278 F.3d 1245, 1253-54 (11th Cir. 2002).  When the last state court rendering judgment affirms without explanation, the Court presumes that it rests on the reasons given in the last reasoned decision. <u>Powell v. Allen</u>, 602 F.3d 1263, 1268 n.2 (11th Cir. 2010)(citing <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803-05 (1991)).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. <u>Carey v. Musladin</u>, 549 U.S. 70, 74 (2006)(citing <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000)).  A state court decision can be deemed "contrary to" the Supreme Court's clearly established precedents within the meaning of § 2254(d)(1) only if: (1) the state court applies a rule that contradicts the governing law as set forth in Supreme Court cases, or (2) the state court confronts a set of facts that is "materially indistinguishable" from those in a decision of the Supreme Court and yet arrives at a different result. <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005); <u>Mitchell v. Esparza</u>, 540 U.S. 12, 15-16 (2003). It is not mandatory for a state court decision to cite, or even to be aware of, the relevant Supreme Court precedents, "so long as neither the reasoning nor the result . . . contradicts them." <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002); <u>Mitchell</u>, 540 U.S. at 16.

A state court decision involves an "unreasonable application" of the Supreme Court's precedent if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown, 544 U.S. at 134; Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 120 S. Ct. at 1520). The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable," a substantially higher threshold. Renico v. Lett, 130 S. Ct. 1855, 1862 (2010)(citing cases). Depending upon the legal principle at issue, there can be a range of reasonable applications. Yarborough v. Alvarado, 541 U.S. 652, 663-64 (2004).

A § 2254 petitioner can also obtain relief by showing that a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). A factual finding by a state court is presumed to be correct and a petitioner must rebut this "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The Supreme Court has not yet decided whether a

petitioner must establish only that a factual finding is unreasonable, or must also rebut the presumption. <u>Wood v. Allen</u>, 130 S. Ct. 841, 848 (2010). In any event, the statutory presumption of correctness "applies only to findings of fact made by the state court, not to mixed determinations of law and fact." <u>Parker v. Head</u>, 244 F.3d 831, 836 (11th Cir. 2001)(citation omitted).

## II. Analysis

This Court has carefully reviewed the record and, for the reasons set forth below, concludes no evidentiary proceedings are required in this Court. <u>Schriro v. Landrigan</u>, 550 U.S. 465, 127 S. Ct. 1933, 1939-40 (2007). Petitioner does not proffer any evidence that would require an evidentiary hearing, <u>Chandler v. McDonough</u>, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court. <u>Schriro</u>, 550 U.S. at 474; <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003). Consequently, the Court will turn to the grounds raised in the Petition.

**A.    Ground One**

**The Trial Judge Violated Petitioner's Fifth, Sixth, and Fourteenth Amendment Rights in Denying His Motion for Mistrial and Motion for New Trial Based Upon the Prosecutor's Misconduct in Utilizing Child Hearsay Statements at Trial which Had Been Specifically Excluded by Motion *In Limine*.**

Petition at 35.

-10-

Petitioner points to two instances concerning what he characterizes as the prosecutor's reference to child hearsay testimony.  The first instance arose during the State's opening statement to the jury:

> MS. WORCESTER: Thank you, Judge.  May it please the Court; Counsel?
>
> Good afternoon, I believe it is, almost.  Ladies and gentlemen, this is my chance, my opportunity to give you an opening statement about what I believe the State of Florida is going to produce in the way of evidence and testimony for you today.  This is what I believe that we'll be able to show you.  I've got a secret (whispering).  That's the first time that [N.S.] let's out this terrible thing that happened to her at the hands of Ralph Seiler.
>
> I've got a secret (whispering).  And she told it to her grandmother, Mary Booher, while she was baby-sitting for her.  Ms. Booher will tell you that she was baby-sitting [N.S.], and she was putting in a movie, a cartoon for her to watch because she stayed home from school that day.  And unbeknown to her, she hears the child say, "I've got a secret."
>
> Well, she's a grandmother, and it's a child, so she says, "What's the secret?"  "Grandpa Seiler made me kiss his pee-pee."
>
> MS. GARBER: Objection, Your Honor.  May we approach?
>
> (Whereupon, a Bench Conference was held outside the hearing of the Jury.)
>
> MS. GARBER: Judge, they already said they're not going to elicit hearsay statements, and they've already mistried the case in their opening statement.  We're asking for a mistrial.
>
> THE COURT: I'm going to deny that.  I think that —
>
> MS. GARBER: I'm asking for a curative instruction then.

THE COURT: Well, I haven't heard any of the evidence yet. She may be able to get all of this out that that's what Nicole told, I don't know.

MS. GARBER: She said Mrs. Booher will tell you that that's what she said.

THE COURT: Your response?

MS. WORCESTER: I don't remember how I phrased it. I don't intend to elicit it from Mrs. Booher, I intend to elicit it from [N.S.]. It's not anything they haven't heard already during the deposition.

THE COURT: I am going to deny your motion for mistrial. You want a curative instruction? What do you want me to say?

MS. GARBER: That they can't elicit that from Mrs. Booher, they have to elicit that from the victim. Tell them to disregard anything that she told them about Mrs. Booher's testimony.

THE COURT: Okay. I will give that instruction.

(Whereupon, the Bench Conference concluded.)

THE COURT: Ladies and gentlemen, I ask you to disregard anything that the State Attorney may have said that Mrs. Booher is going to tell you that [N.S.] said. It would have to come from [N.S.]. Otherwise it would be hearsay.

Exh. 10, Vol III at 404-406.

The second instance occurred during the redirect examination by the prosecutor of Mary Renee Seiler, the mother of the minor-victim, when she was asked about being interviewed by Officer Eddie Wilcox.

Q. The statement when you finally went back and had to give a formal statement because Gator Sapp didn't ask [N.S.] to come and do that, you did it with Eddie Wilcox?

A. Correct.

-12-

Q. Your husband?

A. Correct.

Q. And [N.S.]?

A. Correct.

Q. Do you have a clear memory of this at all?

A. No, ma'am.

Q. So if you were sitting in a room with [N.S.] and John and Eddie altogether, are you trying to hide that fact that you just do not recall?

A. I just don't recall.

Q. As — do you recall any parts of the interview?

A. I recall him talking to her.

Q. And was he also — because the three of you were there, had he talked to you too?

A. Yes.

Q. And he wanted to know what you knew about the case?

A. Yes.

Q. Okay. Did you actually tell him, and I'm on page two of the interview, sworn statement, do you remember exactly what you told him that your mother told you?

A. Not word for word, but I remember the basics, yes, ma'am.

Q. Can you paraphrase or would you rather refresh your memory?

A. I guess I can paraphrase.

Q. Okay.

A. That [N.S.] had informed my mother —

Ms. Garber: Objection.

THE COURT: Overruled.

MS. GARBER: Hearsay.

THE COURT: Overruled. I think she's just asking for what she told the officer.

BY MS. WORCESTER: (Cont'g.)
Q. What did you tell the officer in this statement?

A. That [N.S.] had informed my mother that Ralph had made her suck his pee-pee.

Exh. 10, Vol. VII at 517-519.

Petitioner asserts that the trial court had granted a pretrial motion *in limine* to exclude any hearsay testimony by the child-victim.[3] Petitioner argues that the introduction of these hearsay statements by the prosecutor prejudiced him and denied him "due process of law." Petition (Doc. #1-1) at 1.

**(1) Failure to Exhaust Issue in State Court:**

Respondent argues that Ground One is unexhausted and procedurally barred because it was not presented to the State court on direct appeal in terms of a federal constitutional violation. Response at 7. Instead, Petitioner only argued that the introduction of the child hearsay violated Florida's evidentiary rules. Id. In Reply, Petitioner argues that he "fairly presented" this issue to the State court and points out that he cited to Idaho

---

[3]The record on appeal includes only one pretrial motion *in limine* filed by Seiler on April 10, 2002, which is entitled "Motion *In Limine* to Exclude Testimony" but seeks only to exclude the testimony of Officer Wilcox regarding "his opinion and/or belief as to the credibility of either the Defendant of the alleged victims." Exh. 10, Vol. I at 22-23.

v. Wright,[4] in support of this Ground.  Reply at 2-3.  In its
Amended Response, Respondent argues that Idaho was not cited in
support of a federal issue, but was cited in support of
Petitioner's argument that the child hearsay should have been
excluded as hearsay pursuant to the motion *in limine* order.
Amended Response at 2-3.

Upon review of the record, the Court finds that Ground One is
unexhausted and procedurally barred.  In Petitioner's direct appeal
brief, Petitioner argued that "[t]he trial judge erred in denying
Mr. Seiler's motion for mistrial and objections to the introduction
of the hearsay because the introduction of the inadmissible
testimony violated the motion *in limine* and created prejudicial
error."  Exh. 1 at 27.  Further, Petitioner pointed to Florida case
law in support of his position that the prosecutor's violations of
the motion *in limine* were not "inadvertent and minimal" and, thus
warranted a new trial under Florida law.  Id. at 31.  Petitioner
did not argue that he was denied "due process" or denied a "fair
trial" under federal law, and Petitioner cited Idaho v. Wright only
as to the standard for determining whether the hearsay statement of
a child should be admitted.  Exh. 1 at 25-26.  Petitioner never
asserted a Fourteenth Amendment Due Process claim or a Sixth
Amendment Confrontation Clause claim to the State court, as he does
now before this Court.  Consequently, the Court finds that the

---

[4]497 U.S. 805, 820 (1990).

federal dimension of Ground One is unexhausted and procedurally barred.[5]

**(2) No Violation of Federal Law:**

If Ground One was fairly presented to the state court and thus properly exhausted, the Court finds in the alternative that Ground One is without merit.   It is not entirely clear from a review of the Petition what "clearly established Federal law" Petitioner asserts was violated.   See 28 U.S.C. § 2254(d).   Petitioner sets forth his argument in support of Ground One on pages 30-38 of the Petition.   The argument is almost verbatim from the Initial Brief of Appellant filed in the Second District Court of Appeal of Florida, which raised no federal issue.   Exh. 1 at 25-31. Petitioner's final paragraph adds a citation to an Ohio federal district court case, not involving child hearsay, for the generic proposition that the admission of hearsay may violate the Confrontation Clause of the Sixth Amendment.   The Petition concludes that the erroneous admission of child hearsay statements in this case denied Petitioner due process of law.   Petition at 38.

The Court finds that the two instances violated neither the Confrontation Clause nor the Due Process Clause.   The prosecutor's opening statement, of course, did not involve the admission of any evidence at all, and did not rise to the level of constitutional

_____

[5]Petitioner has not shown the required cause and prejudice or a violation of fundamental fairness to excuse the procedural default.

error.   Frazier v. Cupp, 394 U.S. 731, 733-36 (1969).
Additionally, the Supreme Court has twice noted that it has not
decided whether statements made to someone other than law
enforcement personnel are "testimonial" for purposes of the
Confrontation Clause.  Davis v. Washinton, 547 U.S. 813, 823 n.2
(2006); Michigan v. Bryant, No. 09-150, 2011 WL 676964 *9 n.3 (U.S.
Feb. 28, 2011).   Therefore, even if the opening statement was
intended to recite a statement made by the grandmother, it could
not have violated any Supreme Court decision because the Supreme
Court has not yet decided the issue.  Further, the trial court gave
a jury instruction to disregard the prosecutor's statement.
Additionally, the Court notes that the child-victim, N.S.,
testified and was subject to rigorous cross-examination by
Petitioner's counsel.  See Exh. 10, Vol. VI at 427-453.  Thus, the
Court finds no error under Crawford v. Washington, 541 U.S. 36, 59
(2004) or any other Supreme Court decision.

    With regard to the statement elicited from the child's mother
during redirect examination, the prosecution acknowledged, during
the June 20, 2002 hearing on the defendant's motion for a new
trial, that the question did elicit hearsay.  Exh. 10, Vol. IX at
44.  The State argued, however, that the defense "opened the door
to that line of questioning" during cross-examination of the
child's mother.  Id. at 44-45.  The State pointed out that the
child's mother was specifically asked if she was asked by Officer

Wilcox whether she wanted to add anything after he was finished interviewing N.S., but was not permitted to testify to what she told Officer Wilcox.  Id.  At the conclusion of the hearing, the court acknowledged that its ruling overruling the objection concerning the mother's remark was in error, because the remark was hearsay.  Id. at 88.  The court reserved a final ruling on the issue concluding that "it might be harmless error based on the whole trial and whether the door was opened."  Id.  In its "Amended Order Denying Defendant's Motion for New Trial," dated August 12, 2002, concerning the alleged error in allowing hearsay, the court acknowledged that "this Court had in fact erred . . . ."  Exh. 10, Vol. II at 52.  The court, however, found "that the error was harmless beyond a reasonable doubt.  The error did not contribute to the verdict in this matter."  Id.

A review of the trial transcript does reflect that the defense did inquire whether the victim's mother was asked by Officer Wilcox whether she "wanted to add something" after N.S. made her statement to Officer Wilcox.  Exh. 10, Vol. VI at 508.  The Court need not determine whether the defense opened the door to further questioning on redirect by the State because, even if erroneous, the hearsay elicited from the mother did not have a "substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 623 (1993).  "To show prejudice under Brecht, there must be more than a reasonable

possibility that the error contributed to the conviction or sentence." <u>Mason v. Allen</u>, 605 F.3d 1114, 1123 (11th Cir. 2010)(internal quotations and citations omitted). Here, the child-victim took the stand and directly testified to the jury that Petitioner "made me suck-he made me suck his pee-pee." Exh. 10, Vol. VI at 420. <u>See</u> <u>also</u> <u>Id.</u> at 457. She elaborated that she "was playing in the living room" and he called out to her from "his bedroom, and he was sitting on the bed with only a T-shirt on . . ." <u>Id.</u> at 421. N.S. explained that when she used the word "pee-pee" she meant his "private." <u>Id.</u> N.S. stated that she touched his private area with "[m]y hand and my mouth." <u>Id.</u> at 422. When asked to explain in her own words what she did, N.S. testified "I stuck it in my mouth and then after that I took it out." <u>Id.</u> Although Petitioner testified on his own behalf, he never denied the incident. <u>See</u> <u>generally</u>, Exh. 10, Vol. VII at 556-574.

Based upon the foregoing, Petitioner has failed to demonstrate that the State court's decision was contrary to, or involved an unreasonable application of clearly established Federal law, or was based on an unreasonable determination of the facts. Consequently, in the alternative, the Court denies Ground One as without merit.

**B. Ground Two**

**The Trial Judge Violated Petitioner's Fifth, Sixth and Fourteenth Amendment Rights in Denying Mr. Seiler's Motion for a New Trial Based Upon Cumulative Prosecutorial Misconduct**

Petition (Doc. #1-1) at 2.

Petitioner cites to the following acts of misconduct by the prosecutor: (1) prosecutor's opening statements in violations of motion *in limine* on child hearsay; (2) prosecutor eliciting hearsay in redirect examination of victim's mother concerning statement to Officer Wilcox; (3) prosecutor's "veiled references . . . to inadmissible hearsay statements" made "throughout the trial"; (4) prosecutor's comment that N.S.'s "statement had been consistent throughout the history of the case," which was not supported by the evidence; and (5) prosecutor pointing out during closing argument that Officer Sapp was no longer in a Glades County uniform. Id. at 3-4. Petitioner acknowledges that no simultaneous objection was made by the defense concerning the prosecutor's "veiled remarks" and the prosecutor's statement during closing that N.S.'s statements had been consistent. Id. at 4. Petitioner argues that the only evidence of this case was one statement made by N.S. in 1998 and a decision to prosecute the case two years later. Id. at 5. Consequently, Petitioner contends that the prosecutor's repeated references to N.S.'s hearsay statement and attempt to discredit Officer Sapp, who first investigated the incident in 1998, reached a "level of impropriety" which denied Petitioner due process. Id. at 7.

Respondent submits that Ground Two was not raised as a federal law claim in the state courts, and thus is unexhausted and procedurally barred. Response at 10. Instead, on direct appeal

Petitioner only argued that the remarks violated the State's evidentiary rules. <u>Id.</u> In particular, Petitioner exclusively cited to Florida cases, arguing "Florida courts have long recognized the need for counsel to confine their closing comments to evidence presented during trial." Supplemental Response at 4, (citing Exh. 1 at 34-35).

**(1) Failure to Exhaust in State Court:**

Upon review of the record, the Court agrees that Petitioner did not fairly present the federal dimension of the claim raised in the instant Petition to the state courts. No reference is made to any violation of Federal law, and instead the claim is raised in terms of Florida law only. <u>See</u> <u>generally</u> Exh. 1 at 32-26. In particular, Petitioner argued that the cumulative misconduct resulted in "fundamental error" to warrant a new trial under Florida law. <u>Id.</u> at 32. Consequently, the Court agrees Ground Two is unexhausted and procedurally barred.

**(2) No Violation of Federal Law:**

Even if the Court construes Petitioner's "fundamental error" argument as sufficient to alert the State Court of the federal dimension of this claim, the Court finds Ground Two is without merit. A federal habeas court engages in a two-step analysis in determining whether prosecutorial misconduct warrants habeas relief. <u>Spencer v. Sec'y, Dep't of Corr.</u>, 609 F.3d 1170, 1182 (11th Cir. 2010). First, the prosecutor's remarks must be

improper; and, second, the remarks must prejudicially affect the substantial rights of the defendant. Id. Petitioner has satisfied neither prong in this cases.

The Court has considered the allegedly objectionable remarks against the totality of the facts and the circumstances. Hall v. Wainwright, 733 F.2d 766, 773 (11th Cir. 1984). As discussed above, the Court finds that the first two instances, which formed the substance of Petitioner's First Ground for relief, did not amount to misconduct. Further, the trial court rendered a curative instruction concerning the hearsay during the prosecutor's opening statement.

Petitioner claims that testimony was not elicited during trial which supported the prosecutor's opening statement reference that the child victim told her grandmother that she had a "secret." This argument is without merit. The child explicitly testified that the Petitioner told her "not to tell my Nanny or my mom" of the incident. Exh. 10, Vol. VI at 423.

Petitioner acknowledges that defense counsel failed to raise an objection to preserve a claim of prosecutorial misconduct as to either the "veiled references" by the prosecutor or the prosecutor's argument that N.S.'s statements of the abuse were consistent. In any event, Petitioner's claim that "veiled references" amounted to misconduct is vague, and the references do not warrant habeas relief. Additionally, Petitioner's objection to

counsel's closing remark that N.S.'s statements about the incident have been consistent over time is without merit because the prosecutor's argument was a fair comment on the testimony. Upon re-direct examination, N.S. testified as follows:

> Q: What exactly did you tell all of those different people that day in regards to happened to you?
>
> A: I told them what he made me do.
>
> Q: Okay.  And what did you tell them he made you do?
>
> A.  I told him [sic] he made me suck his pee-pee.

Exh. 10, Vol. VI at 455-56.

Finally, the prosecutor's comment during rebuttal argument that Officer Sapp was no longer in a Glades County uniform was a fair comment based on the evidence.  Officer Sapp testified that he left the Glades County Sheriff's Office a number of months after March 1998.  Exh. 10, Vol. VII at 540.  The trial court nonetheless sustained defense counsel's objection to the prosecutor's remark about Officer Sapp.  Id. at 622.  Defense counsel, did not, however, move for a mistrial at the time of the objection.  Id.

Upon review of the statements identified by Petitioner, the Court finds that, when viewed in context, they did not render Petitioner's trial fundamentally unfair.  Donnell v. DeChristoforo, 416 U.S. 637, 642-48 (1986).  Thus, Petitioner has not shown that the State court's rejection of his prosecutorial misconduct claim was contrary to, or an unreasonable application of clearly

established Federal law, or an unreasonable application of the facts.

Accordingly, the Court dismisses Ground Two as unexhausted and procedurally barred.  In the alternative, the Court denies Petitioner relief on Ground Two on the merits.

**C.  Ground Three**

**The Trial Judge Violated Petitioner's Fifth, Sixth and Fourteenth Amendment Rights in Denying His Motion to Interview Jurors Relating to Potential Misconduct at a Post-Trial Hearing**

Petition at 44.

Petitioner contends that the trial court erred in denying defendant's motion to interview two jurors.  The court found that defense counsel had waived the issue of juror misconduct and that the misconduct alleged was inherent in the jury verdict.  Id. Respondent submits that this Ground is unexhausted and procedurally barred because Petitioner never asserted that his Federal Constitutional rights were violated on direct appeal to the State court.  Response at 4-5.

**(1) Failure To Exhaust in State Court:**

The Court agrees that this claim is unexhausted and procedurally barred.  On direct appeal, Petitioner claimed that "the trial court abused its discretion in denying appellant's motion to interview two jurors."  Exh. 1 at 20.  Nowhere in his brief on direct appeal does Petitioner claim that any of his Federal Conditional rights were violated.  Instead, Petitioner

-24-

cites to the Florida statutes and Florida law in support of his direct appeal claim that the trial court erred in denying his motion to interview two jurors. Id. at 20-26. Indeed, Petitioner makes reference only to one federal case in a string cite, U.S. v. Nance, 502 F.2d 615 (8th Cir. 1974).[6] That case acknowledged that counsel needed to make a timely objection to the trial court to preserve the issue of juror misconduct, otherwise the issue will be waived. Consequently, the Court finds that this ground is unexhausted and procedurally barred.

**(2) No Violation of Federal Law:**

In the alternative, Petitioner has presented no evidence or made any legal argument demonstrating that the Florida courts' rejection of this claim is contrary to or an unreasonable application of federal law. Indeed, rules which prevent attorney interviews or other contact with jurors, or preclude juror testimony where the subject inheres in the verdict itself, have repeatedly been upheld as constitutional. See, e.g., Tanner v. United States, 483 U.S. 107, 119 (1987) (stating "[s]ubstantial policy considerations support the common law rule against the admission of jury testimony to impeach a verdict" and applying

---

[6]In Nance, the court found that counsel had waived the issue of juror misconduct. Somewhat akin to the facts in Petitioner's case, the defense counsel in Nance waited until after the verdict was rendered to advise the court that the alternate juror approached defense counsel and advised him that the jurors had been having discussions about the case.

Federal Rule of Evidence 606(b) to exclude testimony of juror misconduct to impeach jury verdict, including jurors' alleged use of drugs and alcohol); U.S. v. Griek, 920 F.2d 840, 843 (11th Cir. 1991); Sims v. Singletary, 155 F.3d 1297, 1312-13 (11th Cir. 1998)(applying Florida rule that juror testimony is not relevant unless it concerns matters that do not essentially inhere in the verdict itself); LeCroy v. Sec'y, Dept. of Corr., 421 F.3d 1237, 1260 (11th Cir. 2005). No Supreme Court case has been cited giving a state criminal defendant the constitutional right to interview jurors.

Accordingly, Petitioner has not shown that the State appellate court's decision finding that the State trial court did not abuse its discretion in denying Petitioner's motion to interview two jurors was contrary to, or an unreasonable application of, clearly established law. Consequently, the Court finds that Ground Three is without merit.

**D.  Ground Four**

**The Trial Judge Violated Petitioner's Fifth and Fourteenth Amendment Rights in Denying His Pretrial Motion for Sanctions/Dismissal Directed to the Loss or Destruction of Officer Sapp's Notes Which Would Have Been Exculpatory Under Brady v. Maryland.[7]**

Petition at 54.

---

[7]In Brady v. Maryland, 373 U.S. 83, 87 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or punishment.

Petitioner argues that the trial court violated his Fifth and Fourteenth Amendment rights when the court denied Petitioner's pretrial motion for sanctions/dismissal premised upon Officer Jerry Sapp's alleged destruction of his 1998 investigative notes of the incident when Sapp left the Glades County Sheriff Office.  Id.  In particular, Petitioner argues that the trial court incorrectly concluded that Officer Sapp's notes were not subject to Brady, and in the alternative, the trial court erred that Officer Sapp's testimony would cure any error.  Id. at 47.  Petitioner raised the Brady claim on direct appeal.  See generally Exh. 1 at 45-49.

Respondent contends that Petitioner has failed to sustain his burden under § 2254, by showing the State court's decision denying Petitioner's Brady claim was "contrary to" or involved an unreasonable application of the Supreme Court's clearly established precedent.   Response at 12.   Respondent also argues that Petitioner's Brady claim is based upon "mere conjecture" because Officer Sapp testified during in his deposition and at the evidentiary hearing that he did not remember if he took notes during his investigation of the incident; and, in fact testified that he did not think he had taken any notes.  Id. at 13-14.  Thus, Respondent submits that Petitioner cannot meet the first prong of Brady.  Id. at 13.  Next, Respondent points out that Petitioner cannot establish that Officer Sapp's notes, even assuming they existed, were either willfully or inadvertently destroyed by the

State.  Id. at 14.  Finally, Respondent argues that Petitioner cannot demonstrate any prejudice due to the alleged destruction of the notes because Officer Sapp testified at trial.  Id. at 15.

The record reveals that the trial court denied Petitioner's pretrial motion[8] after an evidentiary hearing in chambers immediately before the start of trial.  Exh. 10, Vol. IV at 6-7. In pertinent part, the court found as follows:

> THE COURT: We can go on the record and let the record reflect that Mr. Seiler is present, we had a motion - yesterday afternoon - to dismiss by the Defense, and I indicated I would rule this morning on that.  I did last night read the cases provided by the Defense and their argument, and I asked a question yesterday about whether this was evidence or not, and on some of my own research last night I believe that under the discovery rules 3.220, these field notes are probably not discoverable anyway.  So, anyway, it won't be a discovery violation, which, of course, I don't think that was the argument.
>
> The argument was basically Brady material.  Actually it's 3.220(B)(1)B where it says that the term statement is used here in including written statement made by the person otherwise adopted or approved by the person and also includes any statement or any kind or manner made by the person in written or record or summarized in any writing of the Court.
>
> The term statement is intended to include all police and investigative reports of any kind prepared for or are in connection with the case, but shall not include the notes from which those reports are compiled.
>
> There was not a report done by Gator Sapp, but in his field notes, and I believe there is some case law to the effect that if you want any field notes preserved, you

---

[8] A copy of Petitioner's Motion for Sanctions/Motion to Dismiss is included in the record on direct appeal.  Exh. 10, Vol. I at bates stamp number 24-26.

need to file a <u>Brady</u> motion and ask for an order
preserving field notes early on in a case.

So, number one, I find there is no discovery violation
since it was field notes.  And as far as <u>Brady</u> goes, I
think there has to be a showing of whether they would be
exculpable or not.  And also there is a balancing — there
is a balancing test that the Court has seemed to apply,
and in this case, it appears to me that if I was
Defense Counsel, I'd like to have them too, but under the
balancing test, I am going to deny the motion to dismiss.

Exh. 10, Vol. IV at 6-7.  The appellate court denied Petitioner

relief on his <u>Brady</u> claim on direct appeal.

    "To establish that a <u>Brady</u> violation undermines a conviction,

a convicted defendant must make each of three showings: (1) the

evidence at issue is favorable to the accused, either because it is

exculpatory, or because it is impeaching; (2) the State suppressed

the evidence, either willfully or inadvertently; and (3) prejudice

. . . ensued." <u>Skinner v. Switzer</u>, No. 09-9000, 2011 WL 767703 *9

(U.S. Mar. 7, 2011)(internal quotation marks and citations

omitted).  A defendant claiming a <u>Brady</u> violation is entitled to a

new trial if he establishes that "there is a reasonable probability

that, had the evidence been disclosed to the defense, the result of

the proceeding would have been different." <u>United States v.</u>

<u>Bagley</u>, 473 U.S. 667, 682, 685 (1985)(internal quotation marks

omitted); <u>see</u> <u>also</u> <u>Kyles v. Whitley</u>, 514 U.S. 419, 433 (1995).  A

"reasonable probability" of a different result exists when the

government's evidentiary suppressions, viewed cumulatively,

undermine confidence in the guilty verdict.  See Kyles, 514 U.S. at 434.

At trial Officer Sapp testified that when he conducted the initial investigation of the incident in 1998, he had determined that there was not probable cause for an arrest.  Exh. 10, Vol. VII at 539.  Officer Sapp stated that he would have recalled if "serious allegations of child abuse" had been made when he was sent to investigate the incident at the Booher's home, the maternal grandparents of the child-victim.  Id. at 540.

Applying the deferential standard of review, the Court denies Petitioner relief on Ground Four.  The Court finds that Petitioner has not demonstrated that the State court's decision in denying Petitioner's motion for sanction/dismissal was "contrary to" or involved an unreasonable application of the Supreme Court's clearly established precedent.  First, the State court correctly identified Brady as the controlling law that governed Petitioner's pretrial motion.  Second, based upon a review of the record, the State court did not unreasonably apply Brady.  Even assuming that Officer Sapp took field notes, the notes would not have been admissible at trial because Officer Sapp testified at trial consistent with what Petitioner hypothesizes that the notes would have reflected - - that no serious allegations of sexual abuse were reported by the Boohers or the child-victim's parents.  Thus, the Court denies

Ground Four on the merits.

ACCORDINGLY, it is hereby

**ORDERED:**

1.  The Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED** for the reasons set forth above.

2.  The **Clerk of Court** shall terminate any pending motions, enter judgment accordingly, and close this case.

### CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability.  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability (COA).  Id.  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  Id. at § 2253(c)(2).  To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004)(quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003).

Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Fort Myers, Florida, on this __9th__ day of March, 2011.

JOHN E. STEELE
United States District Judge

SA: hmk
Copies: All Parties of Record

-32-